963 So.2d 351 (2007)
UNIVERSAL CITY DEVELOPMENT etc., et al., Petitioner,
v.
Mary Ann WILLIAMS, etc., Respondent.
No. 5D07-832.
District Court of Appeal of Florida, Fifth District.
August 24, 2007.
*352 Lamar D. Oxford and James A. Wilkinson, of Dean, Ringers, Morgan & Lawton, P.A., Orlando, for Petitioner.
Carlos Diez-Arguelles, of Martinez, Manglari, Diez-Arguelles & Tejedor, Orlando, for Respondent.
MONACO, J.
We have certiorari jurisdiction to review this "cat out of the bag" discovery matter. See Fla. R.App. P. 9.030(b)(2); Allstate Ins. Co. v. Langston, 655 So.2d 91 (Fla. 1995); Wooten, Honeywell & Kest, P.A. v. Posner, 556 So.2d 1245 (Fla. 5th DCA 1990). Because the discovery order issued by the trial court is overbroad, we grant the writ.
The petitioners, Universal City Development Partners, Ltd., doing business as Universal Studios, and Universal Studios (collectively, "Universal"), own and operate an amusement theme park that featured a ride known as Back To The Future.[1] The respondent, Mary Ann Williams, rode on the attraction, and alleges that during the ride her head "was going wobbly." She asserts that she felt nauseated, felt funny, and knew that something was not right. Later, the health services personnel at Universal reported that they had seen Ms. Williams and listed her chief complaint as "syncope[2] right sided paralysis." The report *353 says also that she described a "sudden course, aphasia[3] but conscious," although no trauma was noted. Apparently, Ms. Williams collapsed after the ride and suffered right side paralysis and aphasia. She was thereafter hospitalized. She was subsequently released from hospitalization with a diagnosis of right side hemiparesis[4], dysphasia[5], gait instability, impaired self-care skills and aphasia.
Eventually, Ms. Williams brought suit against Universal seeking damages on a negligence theory. Her complaint alleges that Universal breached the duty of care by (a) operating a ride that had many jerking movements; (b) failing to provide a safe ride; and (c) failing to warn of "hidden dangers." Universal denied liability.
During the course of discovery Ms. Williams sought the names, addresses and all other information in the possession of Universal of all persons who claimed an injury as a result of riding on the attraction from its inception to the date of the interrogatory. Additionally, Ms. Williams sought all medical reports of all persons injured on the ride from inception to the date of the request to produce. Universal objected for the usual reasons, including overbreadth, undue burden and invasion of the privacy rights of the other patrons. Universal did admit that it kept records of such information, however, and did eventually provide some of the information regarding claimed injuries for the three years between the inception of the attraction and the date of the alleged injury to Ms. Williams.
Eventually the trial court entered an order overruling the objections and requiring Universal to provide the names and addresses of all persons who during a period of seven years, three years prior to the incident to four years after the incident, reported that they suffered from either heart attack, headache, stroke, neck pain, passing out, fainting or dizziness after riding on the Back To The Future attraction. Universal argues that the discovery order is overbroad on a number of levels and seeks a writ of certiorari.
Certiorari is available when a discovery order departs from the essential requirements of law and causes material injury throughout the remainder of the case, leaving no adequate remedy on appeal. See Tanchel v. Shoemaker, 928 So.2d 440 (Fla. 5th DCA 2006). It is the appropriate remedy when an overly broad discovery order is issued by the trial court. See Wooten, Honeywell & Kest. We conclude that certiorari relief is warranted in the present case most particularly because once the information concerning persons who previously rode on the attraction is divulged, it cannot later be withdrawn.
First, Universal urges that the time period for the incidents is not sufficiently limited. This argument, we believe, has merit. While we have no difficulty in concluding that the trial court was within its discretion in ordering discovery for the three years prior to the incident, *354 we see no basis for requiring Universal to produce information on events happening subsequent to the incident.
This court has frequently noted that incidents subsequent to an occurrence in question are immaterial in establishing whether a defendant was on notice of the possibility that a claim might arise. See, e.g., Tanchel; Caterpillar Indus., Inc. v. Keskes, 639 So.2d 1129 (Fla. 5th DCA 1994). Here, Universal is charged in the complaint essentially with failing to provide a safe ride and failing to warn of hidden dangers. Boiled down, Ms. Williams wants to use the discovery information in question to demonstrate that Universal had notice of the health risks of its ride. As nothing that happened after the incident would have any bearing on whether Universal had notice of any dangerous propensities of the ride prior to the time that Ms. Williams rode on it, there is virtually no relevant information, or information that could lead to admissible evidence that could emerge from the inquiry. Accordingly, we quash that part of the discovery order requiring discovery of claims information subsequent to the date of the injury alleged in the complaint.
Next, Universal complains that the discovery order is overbroad because it requires it to disclose the names and addresses of those complaining of a stroke, fainting, dizziness, headaches, neck pains or a heart attack after riding on the amusement. Universal says that people suffering from heart attacks and neck pains should not be included in the discovery. There is some merit to this argument.
Florida has long held that before prior accidents or incidents are either discoverable or admissible, the plaintiff must establish that the accidents or incidents are "substantially similar" to the injury in question. See Caterpillar Indus., 639 So.2d at 1130. The leading case on this issue appears to be Perret v. Seaboard Coast Line R.R., 299 So.2d 590 (Fla.1974). There, the Florida Supreme Court said that:
Subject to the general requirement of similarity of conditions, reasonable proximity in time, and avoidance of confusion of issues, the courts have generally recognized that . . . evidence of prior similar injuries resulting from the same appliance as the injury in suit, is admissible for the purpose of showing the existence of dangerous or defective premises or appliances.
Id. at 592. See also Goodyear Tire & Rubber Co. v. Cooey, 359 So.2d 1200 (Fla. 1st DCA 1978). Without such a limitation we would be sanctioning the conduct of a fishing expedition. See Caterpillar Indus.
Here, neck pains are at least remotely related to the injuries alleged to have been suffered by Ms. Williams. Nothing at this point, however, suggests that the injuries of Ms. Williams are substantially similar to those of persons suffering a heart attack after the ride. If some nexus between heart attacks and the injuries of the respondent are later established, then perhaps this demand might be revisited. At present, however, heart attacks fail the substantially similar test. Accordingly, we quash that part of the order requiring Universal to produce information concerning persons having a heart attack after riding the amusement.
Finally, Universal asserts that the trial court departed from the essential requirements of law in ordering it to produce the names and addresses of persons who complained of the listed medical issues without protection for the right of privacy of such persons. Once again, we find merit in this position.
*355 Article 1, section 23 of the Florida Constitution, entitled Right of Privacy, was intended to "protect the right to determine whether or not sensitive information about oneself will be disclosed to others." See Rasmussen v. South Fla. Blood Serv., Inc., 500 So.2d 533, 536 (Fla.1987). The information involved includes medical information. Id. In Rasmussen the Florida Supreme Court held that the constitutional right of privacy requires the trial court to balance the competing interests that would be implicated by either granting discovery or denying it.
Here, there does not appear to have been any balancing of the interests. The order provides no protection to the persons whose medical information is to be disclosed. At the very least, the medical information to be disclosed by Universal should have any identifying information deleted from it. See, e.g., Haywood v. Samai, 624 So.2d 1154 (Fla. 4th DCA 1993); Ventimiglia v. Moffitt, 502 So.2d 14 (Fla. 4th DCA 1986). For the most part, if notice of the danger of the ride is to be discovered by this information, then having the names, addresses and social security numbers of the previously injured patrons are unnecessary. That is to say, knowing the identification of a few people who got stiff necks on the ride will generally be unhelpful. The fact that they got stiff necks may, however, have some importance in establishing the elements of the pleaded tort.
Moreover, there may be some individuals disclosed for whom further identifying information may, in balance, be appropriate. These individual cases should be weighed separately by the trial court, and if further disclosure is found to be proper, then certainly the delivery of that information may be ordered, provided the trial court takes such steps as good judgment and the balancing of interests would require to honor the right of privacy of those persons provided by our Florida Constitution. Cf., Fla. R. Civ. P. 1.280(c). Accordingly, we also quash that part of the order compelling the disclosure of the names, addresses and other identifying information of the persons known to Universal who have asserted one of the listed injuries as a result of the ride.
WRIT GRANTED.
THOMPSON and EVANDER, JJ., concur.
NOTES
[1] The ride closed on March 30, 2007.
[2] Dorland' Illustrated Medical Dictionary (23rd Ed.), defines "syncope" as "a temporary suspension of consciousness due to cerebral anemia."
[3] Dorland' Illustrated Medical Dictionary (23rd Ed.), defines "aphasia" as "defect or loss of the power of expression by speech, writing or signs, or of comprehending spoken or written language, due to injury or disease of the brain centers."
[4] Dorland' Illustrated Medical Dictionary (23rd Ed.), defines "hemiparesis" as "muscular weakness affecting one side."
[5] Dorland' Illustrated Medical Dictionary (23rd Ed.), defines "dysphasia" as "impairment of speech, consisting in lack of coordination and failure to arrange words in their proper order."